IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNIE WAGES,

    Plaintiff,

vs.                                                      No. CIV 99-305 MV/RLP

MESA AIRLINES, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment **[Doc. No. 11]** and Defendant's Second Motion for Summary Judgment **[Doc. No. 27]**. The Court, having considered the motions, responses, replies, relevant law and being otherwise fully informed, finds that the first motion is well-taken and will be granted and the second motion will be denied as moot.

## BACKGROUND

In this case, Plaintiff Bernie Wages has brought fraud, misrepresentation and prima facie tort claims against her previous employer, Mesa Airlines, Inc. ("Mesa"). She seeks to recover damages for her loss of employment which she asserts was caused by these tortious acts by Mesa's employees. For the purpose of resolving this motion, the Court finds that the following are the undisputed material facts:[1]

---

[1] The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere assertions that a fact is or is not controverted are insufficient. *Id.*

Plaintiff Bernie Wages worked for Mesa Airlines, Inc. ("Mesa") beginning in 1993. Her job duties included ordering supplies, forms, uniforms and special equipment for Mesa and its subsidiaries. She was an at-will employee without an employment contract with Mesa. At all times material to this action William Roberts was employed by Mesa in the Denver Commissary and Michael Lewis was employed as President of Mesa's Mountain West Airlines Division.

In December 1996, Lewis conducted a meeting which Wages attended where he discussed limitations on the authority of Mesa employees to order certain supplies and forms. Wages asserts that Lewis told her at the meeting that the limitations did not apply to ordering forms and uniforms.

On March 25, 1997, Roberts called Wages and told her that Mesa's Denver Commissary needed one million copies of Order Forms. Wages asked about the accuracy of the quantity of forms and asked him to put the order in writing. On March 26, 1997 Roberts sent a facsimile to Wage indicating that he needed two million "Order Forms" and two million "Dash 2000 Seating Charts." Wages then placed an order for the four million forms with UARCO, a printing company. On April 4, 1997, UARCO sent Wages a memorandum stating that for orders exceeding one million forms or an amount that exceeded $20,000 for which a hard copy Purchase Order was not provided, UARCO required a confirming memorandum. Wages called Roberts, told him of the UARCO requirement for written confirmation, and asked whether he should sign the confirming memorandum. Roberts responded that Wages could sign it. Wages sent the confirming memorandum to UARCO for the four million forms. In the second week of August UARCO delivered to Mesa in Denver a portion of the forms at issue. Roberts contacted Wages, told her he had received the partial shipment, and asked when the remainder would be received. On April 30, 1997, the remaining portion of the four million forms from UARCO were delivered to Mesa in

Denver. After all of the forms had been delivered, Roberts called Wages and told her that he had been joking when he told her to order four million forms and that the initial order would have been sufficient.

On May 9, 1997, Lewis told Wages that her employment with Mesa had been suspended indefinitely, until he could investigate the large form order. On May 16, 1997 Lewis terminated Wages' employment with Mesa. After she protested the termination, Mesa completed a "Claims Protest" form in which it stated that Wages was discharged "due to violation of company policy, . . . specifically violation of purchasing limits" by ordering the forms without proper authorization from management. Exhibit C to the Complaint. The form further stated that Wages' actions cost Mesa $71,000 and was a "willful and intentional disregard of [Mesa's] best interests." *Id.*

In April 1997, Mesa agreed to hire Wages as an independent contractor to key freight bills for Mesa at her home beginning June 1997. However, on May 30, 1997, Mesa told Wages that she could not have the position keying freight bills because it was "severing all ties" with her.

Wages asserts that in telling her to order four million forms and that the company ordering limits did not apply to forms, Mesa, through its employees, made false statements to her which led to her termination. She seeks compensation for future wages lost because of Defendant's tortious conduct. Mesa has moved for summary judgment as to all three of Wages' claims.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-

moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendant Mesa's first motion for summary judgment, upon which the Court bases its ruling, argues that Wages cannot avoid the at-will employment doctrine by bringing tort claims against her employer for what is essentially damage from her termination. Mesa asserts that it is

uncontroverted that Wages was an at-will employee and did not have an employment contract with Mesa. Wages argues that she can maintain all three of her claims and all-but-ignores the heart of Mesa's at-will employment argument except to summarily disagree with Mesa's position.

In New Mexico, unless an employee has an explicit contract providing otherwise, employment is presumed to be terminable at-will by either the employer or employee. *See Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575 (Ct. App. 1995) (citing *Melnick v. State Farm Mutual Automobile Insurance Co.*, 106 N.M. 726, 730 (1988)). This means that '[a]n at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability." *Lihoust v. I & W, Inc.*, 121 N.M. 455, 457 (Ct. App. 1996) (citing *Harbarger v. Frank Paxton Co.*, 115 N.M. 665, 668 (1993)). The New Mexico courts have carved out two exceptions to the at-will employment doctrine. First, an employee may have an implied contract where the employer represented that employees would only be terminated for good cause. *Kiedrowski*, 119 N.M. at 575. Such a contract can restrict an employer's ability to terminate an employee. Second, an employee may state a claim for wrongful termination in violation of public policy, also called retaliatory discharge. *Melnick*, 106 N.M. at 730. This claim arises where an employee is fired for performing some act authorized by public policy or refusal to perform an act condemned by public policy. Wrongful termination in violation of public policy requires that the public policy at issue is a clear mandate. *Parker v. John Q. Hammons Hotels, Inc.*, 914 F.Supp. 467, 471 (D.N.M. 1994). In this case, it is undisputed that Wages was an at-will employee at Mesa.

The Court first considers Wages' prima facie tort claim. It is clear under New Mexico law that a claim for prima facie tort cannot be maintained in the at-will employment context. *EEOC v.*

5

*MTS Corp.*, 937 F.Supp. 1503, 1516 (D.N.M. 1996); *Yeitrakis v. Schering-Plough Corp.*, 804 F.Supp. 238, 249 (D.N.M. 1992) ("prima facie tort is unavailable to remedy the termination of an at-will employee, even where he is terminated for bad cause"); *Hill v. Cray Research, Inc.*, 864 F.Supp. 1070, 1078-79 (D.N.M. 1991). Prima facie tort was first recognized as a cause of action in New Mexico in *Schmitz v. Smentowski*, 109 N.M. 386 (1990). The elements of this tort are: (1) an intentional lawful act by defendant; (2) an intent to injure the plaintiff; (3) injury to the plaintiff; and (4) the absence of justification or insufficient justification for the defendant's acts. *Yeitrakis*, 804 F.Supp. at 247 (citing *Schmitz*, 109 N.M. at 394). Courts applying New Mexico law have held that prima facie tort is inapplicable in an at-will employment situation on several bases. The basis upon which this Court relies is that an at-will employee plaintiff cannot satisfy the element of the tort requiring that the plaintiff show that the defendant intended to harm a "'legally protected interest of the plaintiff.'" *Id.* (quoting Restatement (Second) of Torts § 870, Comment e). An at-will employee does not have a legally protected interest in her job and therefore cannot maintain a prima facie tort claim against her employer for being terminated. *Id.* at 248; *Hill*, 864 F.Supp. at 1079. This holding is supported by the fact that when the New Mexico Supreme Court adopted the prima facie tort it specifically cited with approval to Missouri law which does not allow prima facie tort to evade the at-will employment doctrine. *Schmitz*, 109 N.M. at 398.

Plaintiff in this case argues that her case is distinguishable from *Hill*, *Yeitrakis*, and *MTS* because in those cases the plaintiffs sought relief under a wrongful discharge theory for their terminations whereas here the injury Wages suffered was caused by the misrepresentations by Mesa employees and she has not brought a wrongful discharge claim. However, Wages cannot escape the fact that the injury for which she seeks relief is termination of her employment. As Wages

herself has stated, the "injury to the Plaintiff is Plaintiff's loss of employment and benefits at Mesa." Plaintiff's Response to Defendant's First Summary Judgment Motion, at 5. Accordingly, the Court finds that the holdings of *Hill*, *Yeitrakis*, and *MTS* that an at-will employee cannot maintain a claim for prima facie tort for injuries associated with being terminated preclude Plaintiff's prima facie tort claim. The Court therefore grants Mesa's summary judgment motion as to this claim.

Another basis for holding that the prima facie tort claim does not apply in the at-will employment context is that allowing this claim would in effect be an exception to the at-will doctrine which neither the New Mexico courts nor legislature has recognized. *Yeitrakis*, 804 F.Supp. at 247-48; *MTS*, 937 F.Supp. at 1516; *Hill*, 864 F.Supp. at 1079. The Court finds that this same reasoning applies in this case to Plaintiff's misrepresentation and fraud claims as Mesa has argued. Wages cannot evade the at-will employment doctrine by seeking to recover under other tort doctrines for the damages she suffered by being fired. The New Mexico courts have made clear that there are only two exceptions to the at-will doctrine and have declined to adopt additional exceptions. For example, while other jurisdictions recognize a third exception to the at-will employment doctrine – breach of an implied covenant of good faith and fair dealing, the New Mexico Supreme Court decided not to adopt this exception. *See Melnick*, 106 N.M. at 730. The Court explained that other states construe "'bad faith' as conduct by the employer extraneous to the employment contract aimed at frustrating the employee's enjoyment of contractual rights [and] have equated 'bad faith' with fraud, deceit and misrepresentation." *Id.* (citations omitted). However, the New Mexico Court, expressing a concern for the "continued vitality of the employment-at-will doctrine" determined that "employers are entitled to be motivated by and to serve their own legitimate business interests, and they must have wide discretion and flexibility in

7

deciding who they will employ." *Id.* at 732. Accordingly, the Court declined to hold that at-will employment contracts have a covenant of good faith and fair dealing. Particularly in light of the New Mexico Supreme Court's decision not to adopt this third exception which provides relief for employers' bad faith, fraud and misrepresentation because to do so would evade the at-will doctrine, this Court finds that to allow Plaintiff to maintain her fraud and misrepresentation claims to recover for damages caused by her termination would run counter to New Mexico law.

This Court is well aware of the many problems, particularly for employees, associated with the at-will employment doctrine pursuant to which an employee can be fired at any time for almost any reason.[2] However, it is not the purview of this federal district court applying New Mexico law to alter the New Mexico Supreme Court's holding that there are only two exceptions to at-will employment in the state. The *Yeitrakis* court expressed a similar sentiment when it stated, "it is not for this Court to engage in piecemeal judicial tinkering in an area so particularly suited to comprehensive legislative consideration." *Yeitrakis*, 804 F.Supp. at 248. As the *MTS* court explained, to permit an at-will employee to maintain a prima facie tort claim against the employer "would emasculate the doctrine of employment terminable at will – a position the *Schmitz* court clearly rejected." *MTS*, 937 F.Supp. at 1516. The Court finds that to allow Plaintiff's fraud and misrepresentation to recover lost wages for her termination would similarly nullify the at-will doctrine. Accordingly, the Court will grant Defendant's first motion for summary judgment.

---

[2]Of course legislation protects employees from being fired discriminatorily. *See, e.g.*, Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (prohibiting discrimination in employment based on race, color, religion, sex, or national origin); Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (prohibiting discrimination in employment based on age); New Mexico Human Rights Act,§ 28-1-7A NMSA 1978 (prohibiting discrimination in employment based on race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious health condition).

Wages argues that holding that her fraud and misrepresentation claims are barred by the at-will employment doctrine would mean that employees could not bring tort claims against an employer after they are terminated.  The Court clarifies that its holding is decidedly not so broad.  Certainly at-will employees who are terminated can bring properly supported tort claims against their former employers.  For example, an at-will employee could still bring an intentional infliction of emotional distress claim against her or his employer for harassment or a fraud or misrepresentation claim if the employee suffers damages other than those caused by being terminated.  However, an at-will employee cannot, consistent with New Mexico's at-will employment doctrine, seek relief for being terminated by bringing a claim other than for retaliatory discharge or violation of an implied contract.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **[Doc. No. 11]** is granted and Defendant's Second Motion for Summary Judgment **[Doc. No. 27]** is denied as moot.

**DATED** this 5th day of April, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE